Barnes, Judge,
dissenting.
I respectfully dissent. I - am well aware of the highly-questionable conduct engaged in by members of the LaPorte County Prosecutor’s Office and law enforcement community on more than one occasion, having authored this court’s opinions in both Larkin I and Taylor. However, I cannot conclude that Larkin’s speedy trial rights under Criminal Rute'4(C) were violated, nor that the trial court properly granted his motion to dismiss on constitutional grounds.

I. Criminal Rule 4(C)

I differ from the majority regarding its attribution of several periods of time to the Rule 4(C) clock rather than to Larkin. First, white I fully agree with the majority’s analysis that the time in which the interlocutory appeal for Larkin I was pending was attributable to Larkin, I conclude that time did not expire until the clerk of this court certified our decision as final on November 20, 2015.
*260 Indiana Appellate Rule 65(E) states in part:
The -Clerk, shall certify the opinion. or memorandum decision to the trial, court or Administrative Agency only after the time for. all Petitions for Rehearing, Transfer,, or Review .has expired,, unless all the parties request earlier certification. If the Supreme Court grants transfer or review, the Clerk shall not certify any opinion or memorandum decision until final disposition by the Supreme Court. The trial court, Administrative Agency, and parties shall not take any action in reliance upon the opinion or memorandum decision until the opinion or memorandum decision is certified.
It has been said that trial courts lack “jurisdiction” to perform any action in a case while an appeal of a final judgment is pending, except Tor. ministerial tasks such as reassessing costs, correcting the record, or enforcing a judgment. In re Paternity of V.A., 10 N.E.3d 65, 67-68, n.1 (Ind. Ct. App. 2014). See also Pflederer v. Kesslerwood, Lake Ass’n, Inc., 878 N.E.2d 510, 514 (Ind. Ct. App. 2007) (holding that issue of costs and fees to be imposed based on wrongful issuance of injunction was not ripe until appellate decision was certified as final); Hancock v. State, 786 N.E.2d 1142, 1143, n.1 (Ind. Ct. App, 2003) (holding trial court’s action in resentencing defendant following remand on appeal before appellate decision was certified as final “was premature and should be considered as a nullity”).
I concede that our supreme court in recent years has narrowed the definition of appellate-“jurisdiction.” See, e.g., In re D.J. v. Indiana Dep’t of Corr., 68 N.E.3d 574, 579 (Ind. 2017); In re Adoption of O.R., 16 N.E.3d 965, 970 (Ind. 2014). It is possible that a trial court’s actions while an appeal is pending may not raise a “jurisdictional” problem and such actions may not be “void.” See K.S. v. State, 849 N.E.2d 538, 541 (Ind. 2006) (holding that judgments entered by a court having subject matter and personal jurisdiction are not void). However, I still believe such actions are at least “voidable” based on clear procedural error. An action that is “voidable” has a defect or imperfection that can be cured by the ratification or confirmation of a party who could have taken advantage of the defect.. In re Guardianship of A.J.A., 991 N.E.2d 110, 114 (Ind. 2013).
Had Larkin decided to object to any of the premature actions by the State or trial judge, I believe there would have been no choice but to sustain such objections. He did not do so, but rather essentially ratified the premature actions. In any case, the actions of the prosecutors and trial judge in withdrawing or recusing and seeking appointment of a special prosecutor before our decision in Larkin I was certified inured to Larkin’s benefit, in terms of the Rule 4(C) time period: they expedited the progress of the casé once our opinion was certified. It would improperly penalize the State to say that it restarted the Rule 4(C) clock before certification of our Larkin I opinion. I also note that, if the parties were in agreement that no one would seek transfer or rehearing, they could have jointly asked this court to certify our opinion before the official time period for certification had passed, but they’ did not do so. Perhaps Larkin was considering filing a rehearing or transfer petition after we dismissed his appeal as moot and wanted the full amount of time to consider whether to do so.[7] Additionally,it would have been highly inadvisable for *261 the trial court to have attempted to schedule a new trial date before it was clear that our decision in Larkin I was. final. Consequently, I believe the time period until. November 20, 2015,. was chargeable to Larkin for Rule 4(C) purposes.
Next, I address the delay associated with Larkin requesting the recusal of Judge Alevizos from the case and the eventual appointment of Judge Blankenship as special judge on February 29, 2016.[8] I find that the caselaw is well-settled on this point: any delay occasioned by a defendant’s motion for change of judge is chargeable to the defendant under Rule 4(C). See State ex rel. Brown v. Hancock Cty. Superior Court, 267 Ind. 546, 547-48, 372 N.E.2d 169, 170 (1978); State v. Grow, 255 Ind. 183, 185, 263 N.E.2d 277, 278 (1970); Henderson v. State, 647 N.E.2d 7, 13-14 (Ind. Ct. App. 1995) (describing delay caused by finding special judge qualified to hear case as due to “court congestion”), trans. denied. It does not matter that the defendant’s request for a change of judge is “justifiable or meritorious.” Grow, 255 Ind. at 185, 263 N.E.2d at 278. In Grow, the period of delay in finding a qualified special judge was six months; in Brown, it was sixteen months. In both cases, our supreme court found the entirety of the delays chargeable to the' defendants.
Larkin also contends that Judge Alevizos never should have agreed to accept presiding over this case, or at least should have immediately recused himself after the December 10, 2015 hearing regarding recusal, and the delay in Judge Alevizos not agreeing to step aside until December 31, 2015, should not be chargeable to him. In essence, Larkin argues and the majority agrees that Judge Alevizos had a patently-obvious reason for recusing based on his having presided over a guardianship case involving Larkin’s children and his sister. However, neither Larkin nor the majority have cited a case where recusal was required under circumstances similar to those here, nor any Rule of Judicial Conduct that unequivocally mandated Judge Alevizos’s recusal. “The law presumes a judge is unbiased and unprejudiced.” Patterson v. State, 926 N.E.2d 90, 93 (Ind. Ct. App. 2010). In the absence of such clear precedent or rule, I would not say Judge Alevizos had to immediately and automatically recuse himself. In any case, as previously noted, it does not matter whether Larkin had- good reason for asking for - Judge Alevizos’s recusal; the time associated with that request is chargeable to Larkin. In sum, I conclude the time period between Larkin’s motion for change of judge on-November 23, 2015, and Judge Blankenship’s acceptance of the case on February 29, 2016, did not count against the Rule 4(C) time period.
The State concedes that, per the parties’ agreement before the interlocutory appeal, it had ninety days from the date of certification of our Larkin I opinion in which to try Larkin, aside from delays attributable to him or court congestion. By my calculations, this results in a latest possible trial date of May 26, 2016—-with the Rule 4(C) clock recommencing on November 20, -2015 and then being tolled between November 23, 2015 and February 29, 2016. The trial court eventually scheduled trial to begin on June 20, 2016. The question is whether Larkin waived any *262 objection to this trial date. I agree with the State that he did.
On April 7, 2016, the trial court conducted a pre-trial hearing. Before this, Larkin had already filed a motion for discharge under Rule 4(C), contending the time for trial already had passed. This motion was discussed at the hearing but not ruled upon. Also, defense counsel and the special prosecutor discussed possible .trial dates, The special prosecutor offered possible trial dates in early-to-mid May 2016. Defense counsel, however, represented to the trial court that, if in fact it eventually ruled against Larkin’s discharge motion, he would rather begin the trial on June 20, 2016. Defense counsel further indicated that he was waiving any speedy trial argument as to a trial on that date. The trial court clarified for the record, to which defense counsel agreed: “He waives it, he waives it to the extent, as I understand, that he has already made a record that the time has run.” 4/7/2016 Tr. p. 85.
“As a general rule, when a defendant seeks or acquiesces in a delay, the time limitations set by Criminal Rule 4 are extended by the length of the delay.” State v. Black, 947 N.E.2d 503, 507 (Ind. Ct. App. 2009). When a defendant agrees to a trial date outside the Rule 4(C) time limit before that time limit has expired, the defendant waives his or her right to be discharged. Id. at 509. Here, defense counsel, at the April 7, 2016 hearing, made at quite clear to the trial court both that (1) he believed the Rule 4(C) time period had expired, but (2) if it had not, he waived any Rule 4(C) complaint as to trial beginning on June 20, 2016. My analysis is that the Rule 4(C) time period did not expire until May 26, 2016; hence, Larkin waived any claim that a trial beginning on June 20, 2016 exceeded the Rule 4(C) period.
I emphasize that, although Criminal Rule 4 places an affirmative duty on the State to speedily bring a defendant-trial, it is not intended to provide defendants with a technical means to avoid trial. Cundiff v. State, 967 N.E.2d 1026, 1028 (Ind. 2012). I think Larkin may be doing just that. I would hold that the trial court’s .preferred trial date of June 20, 2016, did not violate Larkin’s rights under Criminal Rule 4(C).

II. Motion to Dismiss

Next, I address the trial court and majority’s alternative conclusion that the misconduct of police and prosecutors warrants outright dismissal of the case against Larkin. No one disputes that certain prosecutors and law enforcement officers egregiously violated Larkin’s constitutional rights. However, our supreme court addressed extremely similar misconduct in Taylor and refused to conclude that outright dismissal or suppression of all the State’s evidence was required.
In Taylor, the trial court had suppressed all testimony from any officer who had eavesdropped on the defendant’s privileged communications with his lawyer, which communications revealed the location of the murder weapon. Our supreme court reversed this ruling, ultimately holding:
We conclude that a presumption of prejudice, rebuttable only by proof beyond a reasonable doubt; adequately protects Taylor from prejudice caused by the officers’ eavesdropping and their assertion of the Fifth Amendment privilege about their actions. Thus, prospectively imposing blanket suppression of all testimony from witnesses pleading the Fifth Amendment is inappropriate.
We reverse the blanket suppression of testimony from witnesses who invoke the Fifth Amendment and remand with instructions to determine as to each presumptively tainted witness whether the *263 State has proven beyond a reasonable doubt an independent source for that witness’s testimony without implicating the witness’s Fifth Amendment privilege—and therefore without derogating Taylor’s right of confrontation. The trial court may, in its discretion, either hold a new suppression hearing or proceed directly to a new trial at which the State' may attempt to meet its burden through offers to prove outside the presence of the jury.
Taylor, 49 N.E.3d at 1029.
In my view the State was entitled to attempt to rebut any presumption of prejudice associated with improprieties by prosecutors and police. It may in fact be unable to rebut that presumption, but per Taylor it is allowed to at least try. I am quite familiar with the facts of both this case and Taylor, and I cannot say the facts here are so much more egregious than they were in Taylor that outright dismissal is an appropriate remedy. In any event, Taylor spoke of the possibility that a case of eavesdropping could be so egregious that outright suppression of any eavesdropper’s testimony would be warranted; it did not mention the possibility of dismissal of a case as an appropriate remedy.
I vote to reverse the granting of Larkin’s motion for discharge under Criminal Rule 4(C) and his motion to dismiss on constitutional grounds, and to remand for trial.

. In an October 13, 2015 response to the State's request to appoint a special prosecutor, Larkin's attorney did in fact represent that he was still considering filing a transfer petition,

. The majority states, “The parties, do not dispute the period between November 20, 2015, and December 10, 2015, or twenty days, ran against the Rule 4(C) period....” Op. p. 253. However, the State in its opening and reply briefs appears to take the position that Larkin tolled the Rule 4(C) period beginning on November 23, 2015, when he filed his motion for change of judgé.