## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 07 2020, 9:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Kelly A. Kelly
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Supervising Deputy
Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Bryant Dowdy,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent,* | February 7, 2020<br><br>Court of Appeals Case No.<br>19A-PC-1561<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Barbara Cook-Crawford, Judge<br><br>The Honorable Steven Rubick, Magistrate<br><br>Trial Court Cause No.<br>49G01-1708-PC-28301 |

**Robb, Judge.**

# Case Summary and Issue

[1]     In January 2013, Bryant Dowdy was charged with murder, felony murder, and robbery in one cause ("Patel case") and in February 2013 with murder and attempted murder in another cause ("Clanton case"). The crimes occurred approximately twenty-four hours apart and the victims in the Clanton case participated with Dowdy in the crime leading to the Patel case. The Clanton case went to trial first; Dowdy was convicted of both charges and sentenced to seventy-five years. The Patel case went to trial approximately one year later; Dowdy was found guilty of all charges but was sentenced only for murder and robbery. His sixty-year sentence in the Patel case was ordered to be served consecutively to his sentence in the Clanton case. Dowdy's convictions and sentences in both cases were affirmed on appeal. *See Dowdy v. State*, 2016 WL 6665388 (Ind. Ct. App. Nov. 10, 2016) ("Patel appeal"); *Dowdy v. State*, 2016 WL 4245424 (Ind. Ct. App. Aug. 11, 2016) ("Clanton appeal"), *trans. denied*.

[2]     In 2017, Dowdy filed a petition for post-conviction relief in the Patel case, alleging the charges in the Patel and Clanton cases should have been joined and his trial counsel was ineffective for failing to move to dismiss the charges in the Patel case after he was convicted in the Clanton case. After an evidentiary hearing, the post-conviction court denied the petition. Dowdy now appeals, raising one issue that we restate as whether his trial counsel in the Patel case was ineffective for failing to move to dismiss the charges in that case. Concluding the post-conviction court did not clearly err in finding Dowdy's

trial counsel was not ineffective, we affirm the denial of Dowdy's petition for post-conviction relief.

# Facts and Procedural History

## I.  Underlying Crimes

On December 16, 2012, Nishant Patel listed an iPhone for sale on Craigslist. Dominique Clanton showed the ad to Dowdy, and they decided to rob Patel. Dowdy texted Patel to say that he was interested in the phone, and they agreed to meet the following afternoon at an apartment complex.

On December 17, Dowdy and another man arrived at the apartment complex first, followed by Dominique and his cousin, Eric Clanton.  Dowdy was armed with a shotgun.  When Patel arrived at the arranged location, Dominique and the other man went to his car to talk to him.  Dominique noticed that, in addition to the phone box, Patel had a handgun in his lap.  They spoke about the phone and the selling price, and then, while Dominique and the other man pretended to gather money from their wallets, Dowdy approached the car with his shotgun pointed at Patel.  Dowdy shot Patel in the face, killing him.  When Dowdy, Dominique, and Eric met up later that night, Dominique saw the phone and Patel's handgun in Dowdy's possession.

The next day, Dowdy met Dominique and Eric because Eric had a buyer for the stolen phone.  Dominique drove Eric's car to the meeting spot with Eric riding in the front passenger seat.  Dowdy arrived on foot and got into the back

seat behind Eric. Dowdy gave the phone to Eric and then shot both Eric and Dominique in the head. Dowdy got out of the car on the driver's side and ran. Dominique fell out of the car through the open door and yelled for help before he collapsed. A nearby driver called 911 after he heard the gunshots, saw Dowdy exit the car and run, and saw Dominique fall out of the car.

[6] Indianapolis Metropolitan Police Department officers arrived at the scene and discovered Dominique on the road and Eric slumped over unresponsive in the front passenger seat of the vehicle. Officers discovered the iPhone in its box on the floorboard in front of Eric. Dominique had been shot in the back of the head, was transported by ambulance to the hospital, and survived. Eric suffered three gunshot wounds to his head and died as a result. The gun used to shoot Eric and Dominique was Patel's.

## II. Trial and Appellate Proceedings

[7] On January 14, 2013, the State charged Dowdy with murder, felony murder, and Class A felony robbery in the Patel case. On February 26, 2013, the State charged Dowdy with the murder of Eric and the attempted murder of Dominique in the Clanton case. Attorney Carl Epstein represented Dowdy in both cases.

[8] The Clanton case went to trial first, with a jury trial beginning on April 27, 2015. The State filed a notice of intent to offer 404(b) evidence relating to the events of December 17, 2012, to show Dowdy's "motive for committing the crime under this cause where Eric Clanton and Dominique Clanton are

victims." [Post-Conviction] Exhibits, Volume I at 32. The State argued that "the motive for the [Clanton case] is what happened on – is because of the robbery on the [Patel case]." Transcript [of Clanton Trial], Supplemental Volume at 7.[1] Over Dowdy's objection that evidence from the Patel case was "extrinsic, that it's unrelated to this case," *id.* at 8, the trial court allowed the State to present evidence regarding the events of December 17, 2012, noting that "overall it's [the State's] theory of the case that the first [crime] is tied to the second," *id.* at 11.[2] Dominique testified about the robbery on December 17 and the meeting with Dowdy on December 18. The jury found Dowdy guilty of the murder of Eric and the attempted murder of Dominique, and the trial court sentenced him to consecutive terms of fifty years for murder and twenty-five years for attempted murder.

[9] The Patel case went to trial on April 18, 2016. Again, the State filed a notice of intent to offer 404(b) evidence to show identity, motive, and intent, arguing the shootings of Eric and Dominique on December 18, 2012, were committed with "the sole purpose of covering up the shooting of [] Patel one day prior." [Post-Conviction] Exhibits, Vol. I at 16-17. The trial court allowed the State to admit the evidence. The State called Dominique to testify about the events of both

---

[1] Our citation to the prior cases' transcripts is based on the .pdf pagination.

[2] During the Clanton case, the State referred to the Patel crime only as a robbery. *See id.* at 6 (the State noting that it "will not mention the term 'murder' in its case-in-chief. The State will refer to the first [crime] as a robbery."

December 17 and 18, and before his testimony shifted to the events of December 18, the trial court gave the jury the following admonishment:

> Now the testimony of Mr. Clanton will be shifted at this point to events that took place . . . the 18th of December, and those events are not to be considered by you for what happened. Certain elements the State is using to establish their theory of the case, and that is elements of corroboration and elements of identity to establish their case concerning what you've been hearing about.

The Transcript [of Patel Trial], Volume I at 234-35.[3] A jury found Dowdy guilty of all charges. The trial court entered judgment of conviction only for murder and robbery and sentenced Dowdy to a term of sixty years for murder and a concurrent term of four years for robbery. The trial court ordered Dowdy's sentence in the Patel case to be served consecutively to his sentence in the Clanton case.

[10] Dowdy filed a direct appeal in each case. In the Clanton appeal, one of the issues Dowdy raised was whether the trial court abused its discretion in allowing the State to admit evidence of the events from December 17, 2012. We held the evidence was admissible under Rule 404(b) because it was not introduced to show Dowdy's propensity to commit a crime or that his behavior was in conformity with a character trait. 2016 WL 4245424 at *6. Instead,

---

[3] Dominique was reminded before he began testifying that he was "not to discuss the fact that Eric Clanton has been killed [or] that there has been a trial and conviction of [Dowdy] in his other case." *Id.* at 206.

[t]he testimony of Dominique regarding the events of December 17, 2012 was necessary for the jury to understand the relationships between Dowdy, Dominique, and Eric and the context of the subsequent meeting and shooting of Dominique and Eric on December 18, 2012. The testimony further explained why Dominique contacted Dowdy on December 18, 2012 to say that he had a buyer lined up for the iPhone, why Dominique and Eric arranged a meeting with Dowdy, and why Dowdy handed a white box containing an iPhone to Eric while seated in the Camaro. Additionally, the challenged evidence was offered to establish Dowdy's motive to commit the crimes against Dominique and Eric on December 18, 2012, and Dowdy's identity as the person who committed the crimes.

*Id.* Dowdy's convictions for murder and attempted murder were affirmed.

[11] In the Patel appeal, Dowdy raised the sole issue of whether the trial court erred in admitting evidence related to the events of December 18, 2012. The State responded that "the events of December 18 were intrinsic to the events of December 17[.]" 2016 WL 6665388 at *3. We agreed that the events of December 18 were part of the "complete story of this case" and that they were used to prove Dowdy's identity as the perpetrator of the crimes against Patel. *Id*. "As such, this evidence was relevant to a matter other than Dowdy's propensity to commit the charged offenses." *Id.* Dowdy's convictions for murder and robbery were affirmed.

# III.  Post-Conviction Proceedings

[12] On July 17, 2017, Dowdy filed a pro se petition for post-conviction relief challenging his convictions in the Patel case. Dowdy's petition was later

amended by counsel to allege he was entitled to relief because his trial counsel's failure to move to dismiss the charges in the Patel case under Indiana's successive prosecution statute, Ind. Code § 35-41-4-4, amounted to ineffective assistance.

[13] The post-conviction court held an evidentiary hearing on November 12, 2018. Dowdy's trial counsel, Carl Epstein, was the sole witness at the post-conviction hearing. Epstein testified that he represented Dowdy in both the Clanton and Patel cases from 2012 to 2016. Epstein was admitted to the practice of law in 1981 and was licensed during the time he represented Dowdy but was suspended at the time of the post-conviction hearing. Epstein admitted he did not file a motion to dismiss the charges in the Patel case on the basis that it was a barred subsequent prosecution; he stated he was "[a]pparently not" familiar with the Indiana subsequently barred prosecution statute at the time he represented Dowdy and filing a motion to dismiss "didn't occur to [him] at the time." Transcript of [Post-Conviction] Evidence, Volume II at 6, 8. The post-conviction court took judicial notice of its records in the underlying criminal cases and admitted into evidence the appellate records from the two cases.

[14] On June 12, 2019, the post-conviction court entered its Findings of Fact and Conclusions of Law Denying Post-Conviction Relief, concluding:

> The two criminal events arguably had a common genesis,
> however the [Patel case] arose out of a robbery, while the
> [Clanton case] arose out of an entirely different motive . . . . The
> two murders were not perpetrated within a short period of time,
> nor did they occur in a limited locale. Thus, while the murders

may have had points of congruency, it cannot be found that they had a common motive or that they shared a distinctive nature. Moreover, other than the fact that both murders involved guns, it is apparent that the robbery and murder of Patel did not share common modus operandi with the second killing. As such, the [Patel case and the Clanton case] are not ones that "should have been charged together." Accordingly, if [Dowdy's] trial counsel had made a motion to dismiss . . . it is unlikely that such a motion would have been granted and, as such, [Dowdy's] trial counsel was not ineffective for failing to make the motion.

Appealed Order at 10.

# Discussion and Decision

## I. Post-Conviction Standard of Review

Dowdy appeals the denial of his petition for post-conviction relief. Post-conviction proceedings are not a "super-appeal." *Garrett v. State*, 992 N.E.2d 710, 718 (Ind. 2013) (quotation marks omitted). Rather, they provide "a narrow remedy to raise issues that were not known at the time of the original trial or were unavailable on direct appeal." *Id.*

Post-conviction proceedings are civil in nature and the petitioner must therefore establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). A petitioner who has been denied relief faces a "rigorous standard of review." *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001). To prevail, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction

court. *Hall v. State*, 849 N.E.2d 466, 469 (Ind. 2006). When reviewing the post-conviction court's order denying relief, we will "not defer to the post-conviction court's legal conclusions," and the "findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Humphrey v. State*, 73 N.E.3d 677, 682 (Ind. 2017) (quoting *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000), *cert. denied*, 534 U.S. 830 (2001)). The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004).

## II. Ineffective Assistance of Counsel

### A. Standard of Review

Dowdy contends his trial counsel was ineffective for failing to move to dismiss charges that he claims were barred from prosecution. The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to counsel and mandates "that the right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quotation omitted).

Generally, to prevail on a claim of ineffective assistance of counsel a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002) (citing *Strickland*, 466 U.S. 687, 694). A counsel's performance is deficient if it falls below an objective standard of reasonableness

based on prevailing professional norms. *Id*. And a petitioner is prejudiced by such deficient performance if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001). Failure to satisfy either prong will cause the claim to fail. *French*, 778 N.E.2d at 824. When we consider a claim of ineffective assistance of counsel, we apply a "strong presumption . . . that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Morgan v. State*, 755 N.E.2d 1070, 1073 (Ind. 2001). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002).

## B. Successive Prosecution

[19] Dowdy claims his counsel was ineffective for failing to move to dismiss the charges in the Patel case because they were barred by Indiana's successive prosecution statute after he was tried and convicted in the Clanton case. An ineffective assistance of counsel claim based on failure to make a motion to dismiss requires the petitioner to show a reasonable probability that the motion would have been granted if made. *Garrett*, 992 N.E.2d at 723. Dowdy contends that if his counsel had made a motion to dismiss in the Patel case, it would have been granted because the offenses in the two cases were a series of connected acts that should have been tried in a single prosecution. Because

they were not, Dowdy argues the State was precluded by Indiana Code section 35-41-4-4(a) from proceeding as to the second case.

[20] Pursuant to Indiana Code section 35-34-1-4(a)(7), a defendant may move to dismiss a prosecution prior to trial if the "prosecution is barred by reason of a previous prosecution." Indiana's successive prosecution statute provides:

> A prosecution is barred if all of the following exist:
>
> (1) There was a former prosecution of the defendant for a different offense or for the same offense based on different facts.
>
> (2) The former prosecution resulted in an acquittal or a conviction of the defendant or in an improper termination under section 3 of this chapter.
>
> (3) The instant prosecution is for an offense with which the defendant should have been charged in the former prosecution.

Ind. Code § 35-41-4-4(a). The first two provisions are met in this case: Dowdy was convicted in the Clanton case of murder and attempted murder. Thus, if Dowdy's counsel had made a motion to dismiss the Patel case, the outcome of the motion would have hinged on whether the offenses charged in the Patel case *should have been joined* with the charges in the Clanton case.

[21] To determine whether an offense "should have been charged" in a former prosecution, we look to Indiana's joinder statute:

(a) Two (2) or more offenses may be joined in the same indictment or information, with each offense stated in a separate count, when the offenses:

* * *

(2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

Ind. Code § 35-34-1-9(a)(2); *see also Williams v. State*, 762 N.E.2d 1216, 1219 (Ind. 2002) (noting that the "words 'should have been charged' [in Indiana Code section 35-41-4-4(a)(3)] must be read in conjunction with Indiana's joinder statute"). Indiana Code section 35-34-1-10 then provides:

(c) A defendant who has been tried for one (1) offense may thereafter move to dismiss an indictment or information for an offense which could have been joined for trial with the prior offenses under section 9 of this chapter. The motion to dismiss shall be made prior to the second trial, and shall be granted if the prosecution is barred by reason of the former prosecution.

[22] To determine whether contemporaneous crimes should have been charged together pursuant to section 35-34-1-9(a)(2), we examine "'whether they are connected by a distinctive nature, have a common modus operandi, and a common motive.'" *Williams*, 762 N.E.2d at 1220 (quoting *Henderson v. State*, 647 N.E.2d 7, 10 (Ind. Ct. App. 1995) (decided in the context of denial of a motion to *sever* charges)). In other words, the court must consider whether the operative facts underlying the charges "establish a pattern of activity beyond

mere satisfaction of the statutory elements." *Pierce v. State*, 29 N.E.3d 1258, 1266 (Ind. 2015).

[23]    Our supreme court has summarized the interplay of these statutes as follows:

> Thus, our legislature has provided that, where two or more charges are based on the same conduct or on a series of acts constituting parts of a single scheme or plan, they *should* be joined for trial.  This statutory scheme provid[es] a check upon the otherwise unlimited power of the State to pursue successive prosecutions.  Where the State chooses to bring multiple prosecutions for a series of acts constituting parts of a single criminal transaction, it does so at its own peril.

*Williams*, 762 N.E.2d at 1219 (quotations and citations omitted).

[24]    Relying on the State's arguments for admitting 404(b) evidence at both trials and the State's ensuing appellate arguments supporting the admission of the evidence that his crimes on December 17 and December 18 were tied together, Dowdy claims the two cases against him were based on "a series of connected acts subject to mandatory joinder."  Amended Brief of Petitioner-Appellant at 23.  He differentiates this "series of connected acts" from the State's argument and the post-conviction court's finding that the crimes were not part of a single scheme or plan.  *See id.* at 16 ("Dowdy has always argued the two murder cases should have been mandatorily joined because they were part of a series of connected acts.  The post-conviction court ignored Dowdy's arguments by determining he was not entitled to relief because the crimes were not part of a common scheme or plan.").  In other words, Dowdy appears to parse Indiana

Code section 35-34-1-9(a)(2) into several discrete parts. Our case law, however, has not been so discerning and we believe Dowdy is arguing a distinction without a difference.

[25] In *Williams*,

> [a]n undercover police officer bought drugs from [the defendant], then allowed him to depart and radioed nearby uniformed officers to arrest him. [The defendant] fled into a nearby vacant apartment. The officers arrested him there, finding more drugs in his possession. The State charged [the defendant] with breaking into the apartment and possessing cocaine there, and struck a plea agreement. It then filed charges against him in another courtroom for the undercover buy.

762 N.E.2d at 1217. The defendant's motion to dismiss the second case pursuant to Indiana Code section 35-41-4-4(a) was denied. On appeal, our supreme court reversed, holding that the two cases "were based on a *series of acts so connected that they constituted parts of a single scheme or plan*." *Id.* at 1220 (emphasis added). Thus, it does not appear that "a series of acts connected together" and "a series of acts . . . constituting parts of a single scheme or plan" are meant to be considered and analyzed differently. In any event, Dowdy does not explain how the analysis would *be* different, as he, too, cites the general rule that whether offenses should be joined is determined by analyzing whether they are connected by a distinctive nature, linked by a common modus operandi, or induced by the same motive. *See* Amended Br. of Appellant-Petitioner at 14 (citing *State v. D.B.*, 819 N.E.2d 904, 906 (Ind. Ct. App. 2004), *trans. denied*).

[26] Cases in which we have held successive prosecution was barred have been factually similar to *Williams* in that the crimes have occurred at virtually the same time and in the same general location. *See D.T.A. v. State*, 956 N.E.2d 195, 198 (Ind. Ct. App. 2011) (concluding successive prosecution for dealing in heroin was barred when defendant had already been convicted of visiting a common nuisance where the defendant was charged with selling heroin in the course of conduct that gave rise to the visiting a common nuisance offense); and *Haywood v. State*, 875 N.E.2d 770, 773-74 (Ind. Ct. App. 2007) (reversing the denial of defendant's motion to dismiss under section 35-41-4-4(a) where the defendant was charged separately with operating while intoxicated and resisting law enforcement based on events occurring within a short, uninterrupted period of time and in the same locale).[4]

[27] On the other hand, where a defendant was arrested for operating a vehicle while intoxicated and despite being searched at the time of his arrest, was found to be in possession of a handgun after his arrival at the jail, we held that

---

[4] Dowdy cites *D.B.* for the proposition that crimes need not occur close in time or place to be joined. *See* Amended Br. of Appellant-Petitioner at 14. In *D.B.*, a juvenile charged in adult court with carjacking called a State's witness several months after being charged and threatened to kill her if she testified against him. The State then filed a separate information in the adult court charging the juvenile with intimidation. The court did determine the intimidation charge was "sufficiently linked . . . to permit joinder" with the pending carjacking charge, 819 N.E.2d at 906, but did so in the context of deciding whether the adult court also had jurisdiction over the intimidation count. Indiana's successive prosecution statute was not in play in *D.B.*

Dowdy also cites *Elswick v. State*, 706 N.E.2d 592 (Ind. Ct. App. 1999), *trans. denied*. The court in *Elswick* did mention that a conspiracy to commit murder against a victim-witness of an earlier murder and attempted murder "could have been joined for trial under I.C. § 35-34-1-9[,]" *id.* at 595, but did so in the context of deciding whether the trial court erred in ordering the sentence for conspiracy to be consecutive to the sentences for murder and attempted murder.

prosecuting him for criminal recklessness after he pleaded guilty to operating while intoxicated was not a violation of Indiana Code section 35-41-4-4(a). *State v. Dixon*, 924 N.E.2d 1270, 1273 (Ind. Ct. App. 2010), *trans. denied*. Although the crimes may have shared a "temporal origin," they did not arise within a short period of uninterrupted time or in a limited locale and were not connected by a distinctive nature, modus operandi, or common motive. *Id.* Therefore, the defendant's offenses were not so connected as to constitute a single scheme or plan such that they should have been joined. *Id.*; *see also Richardson v. State*, 800 N.E.2d 639, 645 (Ind. Ct. App. 2003) (where defendant was charged with and convicted of forgery for attempting to cash a check he had stolen eleven days earlier, his subsequent prosecution for the robbery by which he obtained the check was not barred because the two crimes "were sufficiently separated by time and place": "[t]he fact that the property stolen from the first crime was used in the commission of the subsequent crime does not make the robbery and the forgery offenses part of a single scheme or plan that must be tried together."), *trans. denied*.

[28] This case is more akin to *Dixon* and *Richardson* than to *Williams*. We are unpersuaded by Dowdy's attempts to tie the State's evidentiary arguments at his trials to the requirements of joinder. The admitted 404(b) evidence was carefully curated such that it only addressed the State's proffered purposes: to show motive and identity in the Clanton case and to show identity in the Patel case. Patel's murder was never mentioned in the Clanton case and Eric's was never mentioned in the Patel case. Had the cases been joined, however, all that

information would have been fair game during trial, and it is entirely possible that Dowdy would have wished to move to *sever* the charges in order to ensure a fair determination of his guilt or innocence on each charge. *See* Ind. Code § 35-34-1-11(a).[5] Moreover, although the events of December 17 offered a likely explanation for why the events of December 18 came to pass, the State could have presented the Clanton case without reference to the Patel case. The converse is also true: the events of December 18 had little to no bearing on what had already occurred to Patel.

[29] "Joinder restrictions will only bar successive prosecutions brought for a 'single criminal transaction' identified by 'a distinctive nature[,] common modus operandi, and a common motive.'" *Schmidt v. State*, 986 N.E.2d 857, 861 (Ind. Ct. App. 2013) (quoting *Williams*, 762 N.E.2d at 1219), *trans. denied*. Although the facts underlying Dowdy's criminal offenses on December 18 may have their origin in his criminal offenses from December 17, this does not establish a pattern of activity identifiable by its distinctive nature or common modus operandi or motive. If Dowdy's plan at the outset was to eliminate witnesses to the Patel crime, he, Dominique, and Eric were all together within a short period

---

[5] The State is given the initial discretion to charge separate offenses in single or multiple informations. *See Seay v. State*, 550 N.E.2d 1284, 1287 (Ind. 1990). When a defendant has been charged with two or more offenses in two or more informations and the offenses could have been joined under section 35-34-1-9(a)(2), the court may join for trial all such informations upon the motion of the defendant or the State or on its own motion. Ind. Code § 35-34-1-10(b). The flip side of this coin is that if the State does join charges based on section 35-34-1-9(a)(2), the defendant may move to sever the charges and the court may grant severance when it is appropriate to do so to promote "a fair determination of the defendant's guilt or innocence." Ind. Code § 35-34-1-11(a).

of time after the robbery. Instead, Dowdy's crimes occurred approximately twenty-four hours apart, at different locales, and against different victims. Moreover, a modus operandi "refers to a pattern of criminal behavior so distinctive that separate crimes are recognizable as the handiwork of the same wrongdoer." *Penley v. State*, 506 N.E.2d 806, 810 (Ind. 1987). Although Dowdy's crimes all involved a firearm, Dowdy brought his own firearm to the Patel crime and then used the firearm he stole from Patel in the Clanton crime. And gun violence is all too common to constitute distinctive behavior from which a single wrongdoer could be identified. Finally, Dowdy's motive for the Patel crime was robbery and after that crime also turned into a murder, he was motivated to commit the Clanton crime to silence witnesses to his first crime.

[30] Dowdy's crimes were separated by time and place and were not so connected that they constituted parts of a single scheme or plan such that should have been joined for trial. Accordingly, had Dowdy's counsel moved to dismiss the Patel case as a barred successive prosecution following his convictions in the Clanton case, the trial court would not have been obligated to grant the motion.[6] The evidence does not lead unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court because Dowdy has not shown by a preponderance of the evidence that Epstein was ineffective for failing to file a motion that would not have been granted. *See Richardson*,

---

[6] Because the failure to file the motion was not ineffective assistance, the fact that Epstein testified at the post-conviction hearing that he was not aware he *could* have filed such a motion does not affect the outcome.

800 N.E.2d at 645-47 (holding trial counsel was not ineffective for failing to file a motion to dismiss an allegedly barred prosecution where the two challenged charges were sufficiently separated by time and place such that the State properly prosecuted them separately).

# Conclusion

[31] The State's successive prosecution of the Patel case was not barred by Indiana Code section 35-41-4-4(a) because Indiana Code section 35-34-1-9(a)(2) did not require the charges to be joined with the charges in the Clanton case. As such, Dowdy's counsel was not ineffective for failing to file a motion to dismiss the charges in the Patel case and the post-conviction court did not err in denying Dowdy's petition for post-conviction relief.

[32] Affirmed.

Mathias, J., and Pyle, J., concur.