**Terrell WILLIAMS, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 49S05–0108–CR–378.

Supreme Court of Indiana.

Feb. 15, 2002.

Terrance W. Richmond, Milan, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

An undercover police officer bought drugs from Terrell Williams, then allowed him to depart and radioed nearby uniformed officers to arrest him. Williams fled into a nearby vacant apartment. The officers arrested him there, finding more drugs in his possession. The State charged Williams with breaking into the apartment and possessing cocaine there, and struck a plea agreement. It then filed charges against him in another courtroom for the undercover buy. We hold these second charges were barred.

### Facts and Procedural History

On October 12, 1998, Indianapolis Police Detective Ernest Witten was working undercover attempting to purchase drugs. He encountered Williams in the parking lot of an apartment complex. Detective Witten approached Williams and purchased a rock of crack cocaine for $20. After completing the transaction, Detective Witten broadcast the following description of Williams:

> He's walking [ ] west bound towards 38th Street. Do it in front of 3810. He's wearing white with black pants, braids. He's about 6 foot about 230. He's heavy set. You can see him walking west bound right now. Walking towards Marietta Drive. He's real nervous. One car might do. Have Tony go up there.

(R. at 248.)

As he began to walk away from Witten, Williams saw several police cars coming toward him. He "cut out running" toward a building where his brother lived about a hundred yards away. (Supp. R. at 12, 25.) His knock went unanswered, so he locked himself in the empty apartment across the hall.

Officers Weaver[1] and Knecht saw a "black male, heavy build, wearing a white T-shirt and black jogging pants" enter the apartment building. (Supp. R. at 12.) They obtained the building manager's consent to search the empty apartment, where they found Williams and arrested him for residential entry. Williams had two rocks of crack cocaine hidden inside his right sock.

Later that day, the State charged Williams with residential entry and possession of cocaine as class D felonies in Marion Superior Court 9 (the "Court 9 charges"). Williams agreed to plead guilty to possession of cocaine as a class D felony and serve 915 days in jail. In return, the State agreed not to file "habitual or B felony" charges against him. (Supp. R. at 11.) This deal was apparently negotiated on December 8th or 10th.[2] On December 29, 1998, the court entered judgment of conviction. The court read into evidence the probable cause affidavit to serve as the factual basis for Williams' guilty plea.

In the meantime, on December 16, 1998, the State had filed charges against Williams in a different room of the same court. It alleged dealing cocaine within 1,000 feet of a school as a class A felony and possession of cocaine within 1,000 feet of a school as a class B felony (the "Court 20 charges"). During an initial hearing December 23, 1998, Williams pled not guilty. On January 29, 1999, the State added a charge that Williams was an habitual offender.

It is unclear why the plea agreement was not withdrawn after the Court 20 charges were filed, except that there was a fair amount of confusion on both sides. Williams' attorney notified Williams that additional charges were pending against him in Court 20, but it seems Williams was under the mistaken belief that the Court 20 charges stemmed from an unrelated incident in mid-December 1998.[3] (Supp. R. at 7–8, 20–21.) However, the Court 20 charges actually related to Williams' sale of drugs to Detective Witten on October 12th.

The prosecution also suffered from a disconnect. (Supp. R. at 22.) Different deputy prosecutors handled the two cases, and the Court 9 prosecutor had no knowledge of the Court 20 charges. (R. at 38.)

Williams moved to dismiss the Court 20 charges, which are the subject of this appeal. The motion was denied. A jury found Williams guilty of dealing in cocaine as a class A felony, possession of cocaine as a class B felony, and being an habitual offender. The trial court sentenced him to forty years, with twenty suspended, for the dealing and possession charges and added thirty years for the habitual offender finding. The Court of Appeals affirmed. *Williams v. State,* 748 N.E.2d 447 (Ind.Ct. App.2001).

## Indiana's Successive Prosecution Statute

Williams argues the Court 20 charges violate double jeopardy. (Appellant's Br. at 10.) He also argues the prosecution of these charges was barred by Indiana Code § 35–41–4–4(a) because they "should have been brought by way of the same information" as required by Indiana Code § 35–34–1–10(c). (*Id.* at 13.)

---

1. Officer Weaver is the individual identified as Tony in Detective Witten's broadcast. (R. at 335.)

2. The record is not clear when the plea was actually negotiated. Williams testified it was negotiated on December 10, 1998; the prosecutor stated it was negotiated December 8,

1998; and Williams' attorney could not confirm either date. (Supp. R. at 7, 19, 37).

3. The Indianapolis Police Department conducted a drug raid at a home Williams was visiting on December 16th or 17th and arrested everyone present. (Supp. R. at 20.)

We conclude that the Court 20 charges were barred by Indiana's successive prosecution statute, and therefore do not reach Williams' constitutional claims.

Indiana Code Ann. § 35–41–4–4(a) (West 1998) provides:

A prosecution is barred if all of the following exist:

(1) There was a former prosecution of the defendant for a different offense or for the same offense based upon different facts.

(2) The former prosecution resulted in an acquittal or a conviction of the defendant or in an improper termination under section 3 [IC 35–41–4–3] of this chapter.

(3) The instant prosecution is for an offense with which the defendant *should have been charged* in the former prosecution.

(Emphasis added.)

Williams' circumstances satisfy the first two statutory provisions. Williams was convicted in a former prosecution for possession of cocaine as a result of his October 12th arrest. Thus, the outcome of this case centers on whether the instant prosecution is for offenses with which Williams *should have been charged* in the previous prosecution.

■■■ The words "should have been charged" must be read in conjunction with Indiana's joinder statute. *Sharp v. State,* 569 N.E.2d 962, 967 (Ind.Ct.App.1991) (citing *State v. Burke,* 443 N.E.2d 859 (Ind.Ct. App.1983)). The joinder statute provides in relevant part:

A defendant who has been tried for one (1) offense may thereafter move to dis-

miss an indictment or information for an offense which could have been joined for trial with the prior offenses under section 9 of this chapter.[4] The motion to dismiss shall be made prior to the second trial, and shall be granted if the prosecution is barred by reason of the former prosecution.

Ind.Code Ann. § 35–34–1–10(c) (West 1998) (footnote added). Our Court of Appeals has characterized the statute this way: "Thus, our legislature has provided that, where two or more charges are based on the same conduct or on a series of acts constituting parts of a single scheme or plan, they *should* be joined for trial." *State v. Wiggins,* 661 N.E.2d 878, 880 (Ind. Ct.App.1996) (emphasis in original). This statutory scheme "provid[es] a check upon the otherwise unlimited power of the State to pursue successive prosecutions." *Wiggins,* 661 N.E.2d at 881. Where the State chooses to bring multiple prosecutions for a series of acts constituting parts of a single criminal transaction, it does so at its own peril.

This Court has interpreted the language of Indiana's successive prosecution statute on only one occasion. In *Seay v. State,* 550 N.E.2d 1284 (Ind.1990), the defendant made four separate sales of controlled substances to a police informant and an undercover police officer in the late summer and early fall of 1986. *Id.* at 1286. The defendant was tried and convicted of dealing in a controlled substance for sales made on July 14, 1986, and August 4, 1986. *Id.* While the jury was deliberating, the State filed additional charges based on sales made August 14, 1986, and September 2, 1986. *Id.* Seay argued the subse-

---

4. Ind.Code Ann. § 35–34–1–9 (West 1998) provides in relevant part:

(a) Two (2) or more offenses may be joined in the same indictment or information, with each offense stated in a separate count

when the offenses ... (2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

quent prosecution was barred by Ind.Code § 35–34–1–10(c) and § 35–41–4–4. *Id.* at 1287. We held that these four events were sufficiently separated by time and place that joinder was not required and subsequent prosecutions were thus permissible. *Id.* at 1288.

### A Continuous Criminal Act

 The trial court found that Williams' entry into a locked apartment after fleeing police was an "intervening act ... sufficient enough for them to have two separate cases." (R. at 188.) We disagree. To determine whether contemporaneous crimes are part of a single scheme or plan, we examine "whether they are connected by a distinctive nature, have a common modus operandi, and a common motive." *Henderson v. State,* 647 N.E.2d 7, 10 (Ind. Ct.App.1995) (citations omitted).

◼ The record reveals that after buying the cocaine Detective Witten radioed Williams' description and sent Officer Weaver "up there." (R. at 248.) During a pre-trial hearing Williams testified that when he turned around "and took a few steps" five or six police cars had arrived. (Supp. R. at 25.) He ran and the police pursued him into an unoccupied apartment. (Supp. R. at 25.)

These facts show that the Court 9 and Court 20 charges were based on a series of acts so connected that they constituted parts of a single scheme or plan. Therefore, they should have been charged in a single prosecution.

### Conclusion

The judgment of the trial court is reversed.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.