# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**CAROLINE B. BRIGGS**
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOHANN SCHMIDT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  34A02-1207-CR-570 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HOWARD SUPERIOR COURT NO. 2
The Honorable Brant J. Parry, Judge
Cause No. 34D02-0807-FC-144

**May 2, 2013**

**OPINION–FOR PUBLICATION**

**BAKER, Judge**

In this interlocutory appeal, appellant-defendant Johann Schmidt appeals the trial court's denial of his motion to dismiss two counts of Theft,[1] a class C felony, that were filed in Howard County. Schmidt contends that those charges were part of an earlier investigation in Miami County and that he was previously subjected to prosecution in Miami County on those charges. Thus, Schmidt maintains that the Howard County charges must be dismissed in accordance with the Successive Prosecution Statute, Indiana Code section 35-41-4-4.

The record shows that the Howard County prosecutor properly filed charges against Schmidt as to the offenses that were committed in that county, and the Miami County charges did not relate to the Howard County offenses. Therefore, the successive prosecution statute was not violated, and we conclude that the trial court properly denied Schmidt's motion to dismiss.

The judgment of the trial court is affirmed and we remand this cause for further proceedings consistent with this opinion.

## FACTS

Mark Bowyer owns Recycling and Processing Equipment, Inc. (RPE), a business in Miami County that performs various construction-related activities, including recycling and concrete crushing. At some point, Bowyer noticed a concrete-crushing machine on I-465 and stopped to look at it, thinking that he might be able to use one like it for a project in Michigan. Bowyer had also noticed some advertisements for Crushtek,

---

[1] Ind. Code § 35-43-4-2(a).

Schmidt's company. Sometime in 2001, Bowyer contacted Crushtek about purchasing one of its machines.

Thereafter, Bowyer introduced Schmidt to Craig Langley, a vice president at First Farmer's State Bank (FFSB). Langley was present when Bowyer and Schmidt discussed some potential business ideas, which were memorialized in a March 2002 agreement resulting in a joint venture involving Bowyer's and Schmidt's respective companies. This agreement provided for Bowyer's advancement of funds to Schmidt for the purchase of crushing equipment for Schmidt's company. In exchange, Schmidt promised Bowyer a 100% return on his investment that included discounted purchases of crushers for resale and an exclusive right to sell Schmidt machines in various states.

In light of the existing relationship between Bowyer and Schmidt, along with Schmidt's representations about his own business, Langley responded favorably when Schmidt approached him about possible loans. FFSB granted loans to Schmidt in 2003 and in 2004. At some point, FFSB sent Schmidt loan documentation to his office in Georgia. Schmidt signed the loan documents and returned them to FFSB, which then transferred the money to Schmidt.

Between January 2003 and March 2004, FFSB loaned Schmidt a total of $790,147.74. Over the next few years—up to and including 2006—Bowyer paid Schmidt approximately $2 million. Some of the funds were advanced for Schmidt's company's expenses, and some were for the purpose of purchasing crushing machines for resale.

At some point, Schmidt failed to deliver some of the crushing machines that Bowyer ordered. On one occasion, Schmidt asked Bowyer to deliver a crusher that Bowyer had purchased to a firm in Kentucky as a demonstration model. The crusher remained in Kentucky for months until Schmidt ultimately sold it to the Kentucky business. However, Schmidt never paid Bowyer.

On another occasion, Schmidt represented that two crushers Bowyer had purchased were in Spain. When one of Bowyer's employees traveled to Spain to retrieve one of the machines, the employee was informed that its arrival had been delayed. The employee eventually located a damaged crusher at a job site in the Spanish city of Ronda.

The employee subsequently asked Schmidt's sister, who was present, to transport the machine to Malaga for shipment to Bowyer. However, the delivery driver told the employee that Schmidt's sister had ordered him to take the machine to Grenada. The employee followed the machine and the driver, but was delayed by Schmidt's sister at a restaurant as the truck that was carrying the crusher drove away. When the employee noticed the deception and could not locate the delivery truck, Schmidt's sister demanded an additional $106,000 to disclose the crusher's location. Neither this machine nor the other one that was allegedly in Spain, were ever delivered to Bowyer. Schmidt later attempted to induce a Texas bank to loan another business over $300,000 to purchase the machine in Spain. Schmidt eventually obtained a $40,000 cash "down payment" from that other business for that machine. Appellant's App. p. 365.

4

Schmidt became delinquent on his loans and despite FFSB's demands for payment, by 2007, Schmidt had repaid only the first loan. When FFSB employees traveled to Georgia to visually inspect the collateral that Schmidt had pledged for the loans, Schmidt repeatedly sent them to storage locations that did not exist. Schmidt eventually instructed FFSB officials to meet him at his counsel's office. Schmidt ultimately admitted that he had sold the collateral pledged to FFSB to other companies or individuals.

After Schmidt made numerous false promises, Bowyer eventually filed a complaint with the Indiana State Police (ISP). The ISP investigated the circumstances surrounding Schmidt's victimization of FFSB, and the incidents that involved Bowyer. Schmidt was charged in two different cases in Miami County. Under cause FC-188, Schmidt was charged with seven counts, six of which involved Schmidt's thefts and fraud against FFSB, and the remaining count alleged that Schmidt stole a crusher that belonged to Bowyer. On July 16, 2008, under cause FC-97, Schmidt was charged with stealing a "Mobile Supertrack machine and/or money" that belonged to Bowyer that had a "fair market value of $219,000." Appellant's App. p. 127.

While these charges were pending, the State charged Schmidt with two additional counts of theft on July 18, 2008. As amended in December 2008, Counts I and II alleged that Schmidt committed class C felony theft by exerting unauthorized control over property belonging to Bowyer on or about August 31, 2004, that was worth at least $100,000. A third count alleged that Schmidt had committed theft as a class D felony by

5

exerting unauthorized control over Bowyer's property. All of these charges stemmed from funds that Bowyer borrowed from Star Financial Bank in Howard County to send Schmidt in Georgia for the purchase of crushing machines that were not delivered, including the machine that was hidden from Bowyer's employee in Spain.

On September 19, 2009, Schmidt pleaded guilty to Count VII in Miami County, under FC-188, which had accused him of theft of "property of First Farmer's Bank and Trust, to-wit: money." Appellant's App. p. 140, 147. The remaining charges were dismissed. In June 2010, the charge in Miami County under FC-97 and Counts I and II in Howard County were also dismissed.

However, pursuant to the State's motion, the trial court subsequently re-instated the two class C felony theft charges that were alleged to have occurred in Howard County. On April 23, 2012, Schmidt moved to dismiss the case pursuant to the successive prosecution statute, Indiana Code section 35-41-4-4. More particularly, Schmidt alleged:

39. [Schmidt] requests this Court to dismiss the pending charges because he has previously been subjected to prosecution in Miami County for the same alleged scheme or plan.

40. The Miami County charges have been concluded and jeopardy has attached.

41. These charges should have been joined with the charges in Miami County as they arose out of a single joint venture and allege a theft/larceny against the same man by the same alleged victim.

6

Appellant's App. p. 24. The trial court denied Schmidt's motion to dismiss and entered an order, stating in part that

> 5. The informations allege that the Thefts occurred in Howard County via computer network.
>
> 6. The Miami County Prosecutor used his discretion to determine which charges the Defendant committed in his jurisdiction, and filed charges accordingly.
>
> 7. The Miami County Prosecutor could not and did not file charges against the Defendant relating to the offenses committed in Howard County.
>
> 8. The Howard County Prosecutor's office filed charges against the Defendant alleging the Defendant committed a crime within Howard County.
>
> 9. The Howard County Prosecutor will have the burden to prove the allegations made in the Information at trial.

Id. at 62.

The trial court subsequently granted Schmidt's motion to certify the ruling for interlocutory appeal. And on August 18, 2012, we granted Schmidt's motion to accept jurisdiction over this interlocutory appeal.

## DISCUSSION AND DECISION

Schmidt argues that the trial court erred in denying his motion to dismiss. Succinctly stated, Schmidt maintains that "the Howard County charges are part of a prior Miami County investigation and prosecution, should been joined with that prosecution and should be dismissed as a successive prosecution." Appellant's Br. p. 1.

7

In resolving this issue, we note that the trial court's ruling on a motion to dismiss is within the trial court's discretion and that ruling will not be disturbed absent an abuse of discretion. Smith v. State, 780 N.E.2d 1214, 1216 (Ind. Ct. App. 2003). An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. Weis v. State, 825 N.E.2d 896, 900 (Ind. Ct. App. 2005).

We will not reweigh the evidence and will resolve any conflicts in the evidence in favor of the trial court's ruling. Caraway v. State, 891 N.E.2d 122, 124 (Ind. Ct. App. 2008). The trial court's decision will be affirmed on any basis apparent in the record. Jeter v. State, 888 N.E.2d 1257, 1267 (Ind. 2008).

Under Indiana Code section 35-34-1-4(a)(7), a defendant may move to dismiss a prosecution prior to trial if the "prosecution is barred by reason of a previous prosecution." Likewise, Indiana Code section 35-34-1-10(d) permits a defendant who has been sentenced on a guilty plea to move for a dismissal of other indictments or charging informations for "a related offense." Under Indiana Code section 35-41-4-4(a), prosecutions are subject to such motions to dismiss as follows:

> (1) There was a former prosecution of the defendant for a different offense or for the same offense based on different facts.

> (2) The former prosecution resulted in an acquittal or a conviction of the defendant or in an improper termination under section 3 of this chapter.

> (3) The instant prosecution is for an offense with which the defendant should have been charged in the former prosecution.

8

However, "a prosecution is not barred under this section if the offense on which it is based was not consummated when the trial under the former prosecution began." I.C. § 35-41-4-4(b).

If subsection (a)(3) is relevant, the matter should be decided under the law of joinder. Williams v. State, 762 N.E.2d 1216, 1219 (Ind. 2002). Indiana Code section 35-34-1-9(a)(2) provides that offenses must be joined for trial if they are "based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan."

In light of this statute, Schmidt's arguments that the determinative factors are merely whether the offenses were discovered and investigated during the same time frame, whether the defendant can string the offenses together to tell a story, or whether the offenses "related to one or more facts or individuals" are misplaced. Appellant's Br. p. 14-16. Indeed, similar claims were rejected in State v. Dixon, 924 N.E.2d 1270, 1273 n.4 (Ind. Ct App. 2010), trans. denied. Joinder restrictions will only bar successive prosecutions brought for a "single criminal transaction" identified by "a distinctive nature . . . common modus operandi, and a common motive." Williams, 762 N.E.2d at 1219.

In this case, the ISP conducted two investigations. One of them explored the allegations that Schmidt had deprived Bowyer of two crushers valued at approximately $470,000, and then sold the machines to other customers. Appellant's App. p. 359-60, 373. Bowyer reported to the ISP that he had paid Schmidt several million dollars for a

9

number of crushing machines that he never received, and there was "proof that [Schmidt] sold a crusher to [Bowyer], did not deliver it, changed the serial number on this same crusher, and sold it to another individual or company." Id. at 361.

Bowyer testified in two depositions that he had given Schmidt nearly $2 million between 2004 and 2006 as part of an arrangement whereby Schmidt promised a 100% return on Bowyer's investment through discounted purchases of crushers for resale and exclusive dealer rights in several states. Id. at 159, 169-73, 244-45. Bowyer was able to obtain these finances from various sources, including his own funds, private investors, and various banks. Id. at 173-75, 239.

When Bowyer's funds were being advanced for the purchase of manufactured crushers, Schmidt would supply him with the serial numbers on the machines. However, several of these machines were never delivered. Id. at 237, 302, 319. As the incidents involving the machines in Kentucky and Spain demonstrate, Schmidt repeatedly engaged in deception, ultimately admitting that he never intended to deliver the machines that Bowyer purchased. Appellant's App. p. 220, 226, 296-97, 317.

The other ISP investigation involved Schmidt's dealings with FFSB, where Schmidt "fraudulently secured several loans using collateral he no longer owned." Id. at 363, 373. Investigation into these crimes disclosed that Schmidt solicited the following loans from FFSB:

> Loan # 403-21565, issued on January 31, 2003, for $325,100
> Loan # 403-37982, issued on May 5, 2003, for $288,750
> Loan # 403-68680, issued on November 19, 2003, for $100,000; and

Loan # 403-30748, issued on March 11, 2004, for $76,297.74

Appellant's App. p. 370-71.

It is undisputed that Schmidt obtained these loans from FFSB via loan documents sent to his Georgia office that he signed and returned to FFSB. Id. at 370-71. Hence, they were not funds that Bowyer borrowed to pay Schmidt. Additionally, it is apparent that Schmidt deceived FFSB officials and alienated the collateral by selling it to other companies or individuals.

In light of the above, Schmidt's offenses were not "a single criminal transaction" identified by "a distinctive nature . . . common modus operandi, and a common motive." Williams v. State, 762 N.E.2d at 1219. Instead, Schmidt committed offenses against two victims, FFSB and Bowyer. Moreover, the offenses that Schmidt committed against each victim are also different in time and manner. Schmidt's offenses against FFSB were perpetrated by fraudulent loan agreements and the resulting theft of FFSB's property, either by Schmidt's failure to repay the loan or by selling the collateral.

As for Bowyer, Schmidt used the promise of a 100% return on the investment to form a partnership or joint venture that involved exclusive sales territories, product discounts, rights of representation and first refusal, and numerous other promises and acts that had no connection with, or relevance to, Schmidt's dealings with FFSB or his crimes against it. That said, Schmidt's separate series of distinct offenses against different victims would not have required joinder of the charges. See Mayman v. State, 870 N.E.2d 523, 528 (Ind. Ct. App. 2007) (holding that the defendants' decisions to commit

11

burglaries against multiple victims did not permit joinder, because the offenses were only of the same or similar character and not part of a single scheme).

Finally, we reject Schmidt's claim that Indiana Code section 35-34-1-10(c) requires the State to join all "potential" charges in a single prosecution whenever joinder "could" occur. Appellant's Br. p. 16. This statute does not require the State to bring all potential charges in a unified action.[2]

In conclusion, Schmidt has failed to show that the trial court's decision is without support in the record or contrary to the facts and circumstances presented to it. Thus, we decline to set aside the denial of Schmidt's motion to dismiss.

The judgment of the trial court is affirmed, and we remand this cause for further proceedings consistent with this opinion.

MAY, J., and MATHIAS, J., concur.

---

[2] As an aside, we note that Schmidt is apparently arguing that he should not be prosecuted in Howard County because the "acts in furtherance" of the agreement between him and Bowyer were allegedly committed in Miami County. Appellant's Br. p. 10, 18-20. However, the State points out, and we agree, that because the criminal scheme caused Bowyer to borrow money from a bank in Howard County, and to authorize the transfer of that money from a Howard County bank to Schmidt in Georgia, venue is proper in Howard County. See Ind. Code § 35-32-1-1(d)(j). In fact, Schmidt ultimately concedes that venue in this case does exist in Howard County. Appellant's Br. p. 18-19.