## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 02 2017, 5:39 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Brian E. Graves
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney
General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Brian E. Graves,
*Appellant-Petitioner,*

v.

State of Indiana,
*Appellee-Respondent.*

October 2, 2017

Court of Appeals Case No.
16A01-1703-PC-600

Appeal from the Decatur Circuit Court

The Honorable Timothy B. Day, Judge

Trial Court Cause No.
16C01-1303-PC-182

**Bailey, Judge.**

# Case Summary

Brian E. Graves ("Graves") appeals the partial denial of his petition for post-conviction relief, challenging his conviction for Escape, as a Class B felony.[1] We affirm.

# Issue

Graves articulates issues concerning joinder of offenses, due process, speedy trial rights, and assistance of counsel. We address the issue that is not waived, res judicata, or procedurally defaulted,[2] that is: whether Graves was denied the effective assistance of trial and appellate counsel due to failure to challenge his prosecution in Decatur County pursuant to Indiana's successive prosecution statute.[3]

# Facts and Procedural History

---

[1] Ind. Code § 35-44-3-5(a), *recodified at* Ind. Code § 35-44.1-3-4. Graves's adjudication as a habitual offender was vacated by the post-conviction court.

[2] Post-conviction proceedings do not afford the petitioner a "super appeal"; rather, subsequent collateral challenges must be based on grounds enumerated in Post-Conviction Rule 1. *Williams v. State*, 808 N.E.2d 652, 659 (Ind. 2004). If an issue was known and available but not raised on direct appeal, it is procedurally defaulted as a basis for relief in subsequent proceedings. *Id.* If an issue was raised and decided adversely, it is res judicata. *Id.* If not raised on direct appeal, the issue of ineffectiveness of counsel is properly presented in a post-conviction proceeding but, as a general rule, most free-standing claims of error are not available in a post-conviction proceeding because of the doctrines of waiver and res judicata. *Id.*

[3] I.C. § 35-34-1-4.

[3]     Events occurring on February 7, 2010 gave rise to Graves's convictions of crimes in two Indiana counties. Graves was brought to trial in Decatur County after he was convicted in Shelby County of Resisting Law Enforcement and had served, or substantially served, the related sentence. The facts underlying Graves's convictions were recited by a panel of this Court on direct appeal as follows:

> [O]n the cold and snowy evening of February 7, 2010 Indiana State Police Trooper Christopher Howell began to patrol Interstate 74 looking for drivers who might be stranded due to the inclement weather. The trooper observed Graves's truck parked in the emergency pull-off lane on the interstate. Graves was standing at the front of the vehicle. When Trooper Howell stopped to investigate, he asked Graves what he was doing. Graves replied that he was scraping ice from his windshield. Trooper Howell, who observed that there was nothing in Graves's hands, noted that Graves's words were slurred and he was unsteady on his feet. At this point, Howell was standing in front of his police cruiser, which in turn was stopped behind Graves's truck. He asked Graves to come to him. Graves initially refused and told the trooper he was going to "take off." *Transcript* at 34. In response, Trooper Howell issued a "loud command" to Graves to walk to the trooper. *Id.* This time, Graves complied. The trooper patted down Graves and asked where he had been and where he was going. When Graves responded, Trooper Howell detected the odor of alcohol on his breath. He asked if Graves had been drinking and Graves said he had not. Trooper Howell asked for Graves's identification and registration and was informed that they were in the truck. He escorted Graves to the vehicle and watched as Graves retrieved his wallet and began looking through its contents. He noted that Graves had an Indiana identification card, which signified to the trooper either that Graves did not have a driver's license, or that his license was suspended. He asked Graves about the status of

his license and Graves responded that it had been suspended for nonpayment of parking tickets. Graves was not able to produce any of the other requested documentation. At that point, because of the weather and conditions, Trooper Howell asked Graves to sit in the front passenger seat of his police cruiser while he verified Graves's information.

After the two were seated inside the cruiser, Trooper Howell began running Graves's information on a laptop computer located between the two of them such that both Howell and Graves could see the information displayed on the screen. When the laptop began to emit audible alert tones and display Graves's information, Graves was looking at the screen and reading the information along with Trooper Howell. Among the information on the screen was an indication that Graves was wanted on four open warrants. After a few seconds, Graves "turned his head and said sorry, I gotta go." *Id.* at 39. He then opened the door and, according to Howell, "out he went." *Id.* Trooper Howell at first just sat there, "dumbfounded." *Id.* at 40. He saw Graves start toward his truck, and then the trooper exited his car and ran to intercept Graves. During the ensuing scuffle, the trooper repeatedly commanded Graves to "stop resisting" and told him, "You need to stop." *Id.* at 74. He grabbed Graves while they were between the vehicles, but Graves slipped from his grasp and continued to the front passenger side of his truck. Trooper Howell decided to run around the driver's side of the truck and intercept Graves from that direction. He caught Graves near the front of the vehicle. Graves pushed Howell, who fell backward and hit his head and was stunned for a moment. By the time Howell recovered, Graves had climbed into the driver's seat of the truck, but the door was still open when Howell got to him and began pulling on Graves, attempting to extricate him from the truck. He continued pulling Graves by the coat and ordering him to get out of the truck and to quit resisting. At some point, Graves managed to get his truck into gear, stepped on the gas, and began driving away. When he did, the forward motion

caused the door to shut on Trooper Howell's left hand, injuring one of his fingers badly enough that it later required stitches. Trooper Howell hung on "for a little bit" but soon let go. *Id.* at 42. He called the State Police Post and gave them Graves's description and a description of his truck. That description was relayed to law enforcement officials in the area.

Approximately ten minutes later, Deputy Joseph Mohr of the Shelby County Sheriff's Department observed Graves driving on I-74. After ascertaining that the truck matched the description of the subject vehicle, Deputy Mohr initiated a traffic stop. Graves sped away and threw several items out of the window before he eventually stopped after a chase. He was ultimately convicted of escape as a class B felony, resisting law enforcement as a class D felony, and found to be a habitual offender.

*Graves v. State*, No. 16A01-1205-CR-227, slip op. at 1-2 (Ind. Ct. App. Nov. 8, 2012), *trans. denied*.[4]

[4] Graves was sentenced to twenty years of imprisonment, enhanced by thirty years due to his status as a habitual offender. On direct appeal, Graves challenged the sufficiency of the evidence supporting his conviction for Escape. This Court affirmed the conviction, and the Indiana Supreme Court denied transfer. *Graves v. State*, 981 N.E.2d 58 (Ind. 2013).

[5] On March 24, 2013, Graves filed a petition for post-conviction relief, which was subsequently amended to include claims of free-standing error, allegations as to

---

[4] The trial court vacated Graves's conviction for Resisting Law Enforcement.

ineffectiveness of counsel, and Graves's contention that he had not been afforded proper advisements before admitting to his status as a habitual offender. The State responded, admitting that Graves had not received advisements to which he was due. After a hearing conducted on February 22, 2016 and January 12, 2017, the post-conviction court entered an order vacating the habitual offender enhancement and otherwise denying Graves post-conviction relief. This appeal ensued.

# Discussion and Decision

## Post-Conviction Standard of Review

[6] The petitioner in a post-conviction proceeding bears the burden of proving the grounds for relief by a preponderance of the evidence. *Humphrey v. State*, 73 N.E.3d 677, 681 (Ind. 2017). On appeal, the petitioner then stands in the position of one appealing a negative judgment; that is, he or she must show that the evidence leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* We do not defer to the post-conviction court's legal conclusions, but a post-conviction court's findings and judgment will be reversed only upon a showing of clear error, that which leaves us with a definite and firm conviction that a mistake has been made. *Id.* at 682.

## Ineffectiveness Standard of Review

[7] Here, Graves alleges that his trial and appellate counsel were ineffective for failing to argue that his prosecution for Escape was an improper successive

prosecution. When evaluating an ineffective assistance of counsel claim, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Humphrey*, 73 N.E.3d at 682. To satisfy the first prong, "the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have 'counsel' guaranteed by the Sixth Amendment." *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (citing *Strickland*, 466 U.S. at 687-88). To satisfy the second prong, "the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694).

## Trial Counsel

[8] At the outset, we observe that Graves's trial counsel filed a pre-trial motion captioned "Motion to Dismiss (Barred by Prior Prosecution/Double Jeopardy)." (P.C-R. App. at 11.) The motion drafted by trial counsel included arguments that Graves's prosecution in Decatur County violated the double jeopardy protections of the United States and Indiana Constitutions. It was further alleged that the prosecution "is barred by I.C. 35-41-4-3" and that the acts were part of "one continuous event." (P.C-R. App. at 11.) A hearing was conducted on the motion to dismiss and the trial court denied Graves the relief he sought. Graves may not obtain post-conviction relief on a claim that trial counsel was ineffective due to a purported omission of a successive prosecution

claim when counsel asserted and argued the merits of such a claim but simply did not prevail.

[9] Graves also argues that "charges [in Shelby County and Decatur County] should have been filed at the same time" and "trial counsel erred in not addressing this issue." Appellant's Brief at 18. It appears that Graves believes that it would have enhanced his position in plea bargaining if all charges were subject to disposition at the same time.

[10] Criminal actions must be tried in the county where the offense was committed, unless otherwise permitted by law. *Navaretta v. State*, 726 N.E.2d 787, 789 (Ind. 2000). *See also* Ind. Code § 35-32-2-1 (governing situations where the county of commission cannot be ascertained). Under our statutory scheme, one county may not dispose of charges or try a defendant for criminal offenses known to have been committed in another county. *See id.* To the extent that Graves suggests that individual county prosecutors have an obligation to coordinate filing of charges or conduct trials simultaneously with another county prosecutor, he offers no relevant authority for this proposition.

## Appellate Counsel

[11] Although trial counsel preserved the issue for appeal, appellate counsel did not present an issue regarding successive prosecution. The standard of review for a claim of ineffectiveness of appellate counsel is the same as for trial counsel, in that the petitioner must show appellate counsel was deficient in performance and that the deficiency resulted in prejudice. *Ritchie v. State*, 875 N.E.2d 706,

723 (Ind. 2007). Such claims generally fall into three basic categories: (1) denial of access to an appeal, (2) waiver of issues, and (3) failure to present issues well. *Id.* Here, the second category is implicated.

[12] In such cases, ineffectiveness is rarely found because "the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel." *Id.* at 724 (citing *Bieghler v. State*, 690 N.E.2d 188, 193 (Ind. 1997)). Accordingly, our review is particularly deferential to counsel's strategic decision to exclude certain issues in favor of others. *Id.* First, we look to see whether the unraised issues were significant and obvious upon the face of the record. *Id.* If so, then we compare these obvious issues to those raised by appellate counsel, finding deficient performance only when the unraised issues are clearly stronger than the issues presented. *Id.* If deficient performance is found, we next turn to the prejudice prong to determine whether the omitted issues would have been clearly more likely to result in reversal or an order for a new trial. *Id.*

[13] Specifically, Graves contends that his appellate counsel should have argued that his prosecution in Decatur County was a prohibited successive prosecution because the Escape offense was part of the "same scheme or plan" as the Shelby County Resisting Law Enforcement offense. Appellant's Brief at 18-19. We turn to consider whether this was a significant and obvious issue.

[14] Pursuant to Indiana Code Section 35-41-4-4(a), a prosecution is barred if all the following exist:

(1) There was a former prosecution of the defendant for a different offense or for the same offense based on different facts.

(2) The former prosecution resulted in an acquittal or a conviction of the defendant or in an improper termination under section 3 of this chapter.

(3) The instant prosecution is for an offense with which the defendant should have been charged in the former prosecution.

[15] The words "should have been charged" of subsection (a)(3) are to be read in conjunction with Indiana's joinder statute. *Williams v. State*, 762 N.E.2d 1216, 1219 (Ind. 2002). The joinder statute provides in relevant part:

A defendant who has been tried for one (1) offense may thereafter move to dismiss an indictment or information for an offense which could have been joined for trial with the prior offenses under section 9 of this chapter. The motion to dismiss shall be made prior to the second trial, and shall be granted if the prosecution is barred by reason of the former prosecution.

Ind. Code § 35-34-1-10(c).

[16] In turn, section 9 provides in relevant part:

Two (2) or more offenses may be joined in the same indictment or information, with each offense stated in a separate count when the offenses … (2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

Where two or more charges are based on the same conduct or on a series of acts constituting parts of a single scheme or plan, they should be joined for trial and when the State brings multiple prosecutions for a series of acts constituting parts of a single criminal transaction, it does so at its own peril. *Williams*, 762 N.E.2d at 1219. To determine whether contemporaneous crimes are part of a single scheme or plan, we examine "whether they are connected by a distinctive nature, have a common modus operandi, and a common motive." *Id.* at 1220 (quoting *Henderson v. State*, 647 N.E.2d 7, 10 (Ind. Ct. App. 1995)).

[17] In *Williams*, defendant Williams faced charges in two different Marion County courts based upon an incident where Williams sold cocaine to an undercover police officer, the officer allowed Williams to leave but immediately radioed to arrange his arrest by uniformed officers, and Williams fled to a nearby vacant apartment where he was apprehended and found to have rock cocaine in his sock. 762 N.E.2d at 1217. Williams first pled guilty to the charges stemming from breaking into the apartment and possessing cocaine in his sock; then he was charged with Dealing in Cocaine, related to the undercover buy. The Indiana Supreme Court concluded that the charge of Dealing in Cocaine was barred by Indiana's successive prosecution statute. *Id.* at 1219. The Court observed that the undercover officer had radioed Williams' description and sent another officer in pursuit and that Williams had testified he took only a few steps before police cars arrived and he ran into an unoccupied apartment with officers in pursuit. *Id.* at 1220. The Court held:

> These facts show that the Court 9 and Court 20 charges were based on a series of acts so connected that they constituted parts of a single scheme or plan. Therefore, they should have been charged in a single prosecution.

*Id.*

[18] In contrast, a panel of this Court concluded that an appellant who had fled from multiple officers in multiple counties was not entitled to have a charge of Resisting Law Enforcement dismissed under either Double Jeopardy principles or the successive prosecution statute. *Johnson v. State*, 774 N.E.2d 1012 (Ind. Ct. App. 2002). Lapel Police Officer Leeann Byrne tried to stop Johnson for erratic driving but, after an initial stop, Johnson drove off into adjacent Hamilton County. *See id.* at 1013. Officer Byrne stopped her pursuit due to foggy conditions but advised dispatch of the fleeing vehicle. Within five to ten minutes after the radio dispatch, Officer Aaron Von Housman of the Noblesville Police Department attempted to stop Johnson. *Id.* Although Johnson continued driving, he eventually stopped and was arrested a few hours later.

[19] Johnson was convicted in Hamilton County of Operating a Vehicle While Intoxicated and Resisting Law Enforcement. He was also charged in Madison County with Driving While Suspended and Resisting Law Enforcement. Johnson's motion to dismiss was denied, and he appealed, raising issues of Double Jeopardy and successive prosecution. *See id.* at 1014. The *Johnson* Court first concluded that Johnson was not subjected to double jeopardy by

prosecution of the Resisting Law Enforcement in Madison County because "Johnson's actions in resisting Officer Byrne and Officer Von Housman were sufficiently separated by time and distance as to constitute two distinct, separate offenses." *Id.* at 1015. The Court then found that there had been no statutory violation because Johnson's crimes had been committed in multiple counties and could not have been charged together. Thus, the requirement that "the instant prosecution is for an offense with which the defendant should have been charged in the former prosecution," I.C. § 35-41-4-4(a)(3), was not satisfied. *Id.*[5]

[20] These cases had been decided when Graves's appellate counsel selected which issue would be presented on direct appeal. The facts of record indicate that Graves fled from multiple officers in multiple jurisdictions. He did not merely take a few steps after one officer declined pursuit before being arrested by other officers, as was the case in *Williams*. Rather, the facts of the instant case substantially mirror those in *Johnson*. We conclude that appellate counsel did not omit a significant and obvious issue when declining to argue that Graves was subjected to a prohibited successive prosecution.

---

[5] Subsequently, in *Sanders v. State*, 914 N.E.2d 792 (Ind. Ct. App. 2009), an appellant who had fled from multiple officers in a lengthy chase, and had been convicted of two counts of Resisting Law Enforcement, attempted to distinguish *Johnson*. Sanders did not specifically claim that the successive prosecution statute had been violated. However, he contended that he had twice been convicted for one continuous offense, arguing he had engaged in "one continuous act of flight from police officers" and "there was a gap of only minutes instead of the two to three hour gap in *Johnson*." *Sanders*, 914 N.E.2d at 794-95. The *Sanders* Court concluded "in the present case, as in *Johnson*, there were two distinct pursuits." *Id.* at 795.

# Conclusion

Graves has not established that he was denied the effective assistance of trial or appellate counsel. The post-conviction court properly denied Graves's petition for post-conviction relief, in part.

Affirmed.

Baker, J., and Altice, J., concur.