## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 22 2019, 5:30 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stacy R. Uliana
Bargersville, Indiana

Doug Walton
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mickey Rowe,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 22, 2019

Court of Appeals Case No.
18A-CR-841

Appeal from the Pike Circuit Court

The Honorable Jeffrey L. Biesterveld, Judge

Trial Court Cause No.
63C01-1707-FA-456

**Altice, Judge.**

# Case Summary

[1] In 2007, Mickey Rowe was charged with six offenses, including Class C felony incest of his daughter, A.J., and Class D felony maintaining a common nuisance. In November 2008, the State amended the charging information to add a count of Class D felony obstruction of justice. On or about that date, Rowe pled guilty to the maintaining a common nuisance and obstruction of justice charges, and the remainder of the counts were dismissed with prejudice. In 2017, A.J. contacted authorities and provided a statement describing that Rowe had abused her for more than fifteen years. Thereafter, the State charged Rowe with Class A felony child molesting and Class A felony criminal deviate conduct resulting in serious bodily injury. Rowe filed a motion to dismiss arguing that, given the 2008 plea agreement and dismissal with prejudice of the incest and other charges, the State was barred from prosecuting him by the successive prosecution statute, Ind. Code § 35-41-4-4. The trial court denied his motion to dismiss, and Rowe filed this interlocutory appeal, claiming that the State was barred from prosecuting him for acts stemming from an improper sexual relationship with A.J. because that matter had already been prosecuted and resolved by plea agreement.

[2] We affirm.

# Facts & Procedural History

[3] A.J. is the biological daughter of Rowe and Tracy Mathis (Mother). A.J. was born in June 1988, and she lived with Mother and did not know Rowe until

1997, when Mother and Rowe reunited and Rowe moved into their Winslow, Indiana home. A.J. was around nine years old at the time. At some point, the family moved from Winslow to Martinsville, to Terre Haute, to Nashville, Tennessee, and then, in 2006, to Petersburg, Indiana. In Petersburg, Rowe and Mother owned and operated Rockstar Tattoo Parlor.

[4]   In March, April, and May 2007, Officer Steve Nash of the Petersburg Police Department spoke to Irwin Glispie, a former employee of Rockstar Tattoo Parlor. Glispie reported to Officer Nash that in the fall and winter of 2006, A.J. told Glispie that she had been having a sexual relationship with Rowe for about the past six years, dating back to when A.J. was approximately twelve years old. Glispie also told Officer Nash that Rowe admitted to having a sexual relationship with A.J. and that other people, including Mother, knew about the sexual relationship. Glispie described an incident that occurred at the tattoo shop in the winter of late 2006 or early 2007 when Glispie saw blood on the floor, and that, as Mother was cleaning it, Rowe commented that the blood was from his having sex with A.J. Glispie got fired or quit his job after a dispute arose between him and Rowe concerning Rowe's sexual relationship with A.J.

[5]   Following Glispie's report, police interviewed other individuals, one of whom was a long-time female friend of A.J.'s who told officers that she had visited the family's homes in Winslow, Terre Haute, Nashville, and Petersburg and had seen Rowe touch and grab A.J. in a sexual way. The friend recalled seeing the displays as early as when A.J. was in sixth grade. As part of its investigation of Rowe, police also viewed Rowe's conversations on MySpace chatrooms.

Through their investigation police learned information that supported Glispie's report of an incestuous relationship between Rowe and A.J. The investigation also revealed information that Rowe was having sexual encounters with other teenage females at the Rockstar Tattoo Parlor.

[6] In May 2007, the State charged Rowe under Cause No. 63C01-0705-FB-299 (Cause 299) with six offenses: Count I, Class C felony incest; Count II, Class D felony maintaining a common nuisance; Count III, Class D felony maintaining a common nuisance; Count IV, Class A misdemeanor obscene performance; Count V, Class D felony dealing in marijuana; and Count VI, Class B felony sexual misconduct with a minor. Rowe filed a motion to sever the charges, and the parties agreed as follows: Count I, incest, would be tried individually; Counts II and III were severed and filed under cause number 63C01-0707-FD-439 (Cause 439); Count IV was severed and filed under cause number 63C01-0707-CM-149; and Counts V and VI were severed and filed under cause number 63C01-0707-FB-440. As is relevant here, the language of the incest charge (Count I of Cause 299) read as follows:

> [O]n or about the months of November, December 2006 and January, February 2007, at Pike County, State of Indiana, the said MICK ROWE A/K/A HANDSOME MICK ROWE being at least Eighteen (18) years of age, to-wit: approximately thirty-nine (39) years of age, having been born in the month of August, 1967, did knowingly engage in Sexual Intercourse with his biological child to-wit: a minor with initials [A.J.], all of which was contrary to the form of the Statutes in such cases made and provided and against the peace and dignity of the State of Indiana.

*Appellant's Supplemental Appendix Vol. 2* at 31.

[7] In the course of discovery, A.J. was deposed in July 2008, and she denied that Rowe ever sexually abused her. Her testimony included:

> Q: Have you had sexual intercourse with your dad?
>
> A. Never. That's disgusting.
>
> Q. Ever?
>
> A. Ever.
>
> Q. Okay.
>
> A. I would not dream of doing so.

*Appellant's Appendix Vol. 2* at 78. In her testimony, A.J. confirmed that she had given a written statement in which she denied having had sexual relations with Rowe.

[8] On November 24, 2008, the State requested and received permission to amend the charging information in Cause 299 to add Count II, Class D felony obstruction of justice. The next day, the State entered into a plea agreement with Rowe to resolve the charges under all four cause numbers. He pled guilty to the following two offenses: (1) Class D felony obstruction of justice (which was the later-added Count II of Cause 299), and (2) Class D felony maintaining

a common nuisance (Count II in Cause 439).[1]  The remaining six charges in the separate cause numbers were dismissed with prejudice, including the incest charge.  The trial court accepted the plea agreement and sentenced Rowe to concurrent terms of eighteen months in jail under Cause 299 and eighteen months in jail under Cause 439, with credit for time served.

[9]     In May 2017, A.J. contacted the Pike County Sheriff's Department and requested to meet with law enforcement to report that Rowe had sexually abused her, beginning when he moved in with the family in 1997 and lasting until she left him in or around 2015.  A.J., accompanied by her husband, drove from Florida and met with Detective J. Tobias Odom and the Pike County Prosecutor on May 12, 2017.  Following the hours-long interview, authorities

---

[1] The Class D felony obstruction of justice and Class D felony maintaining a common nuisance charges alleged, respectively:

> [On] or about May 30, 2008 at Pike County, State of Indiana, the said MICK ROWE A/K/A HANDSOME MICK ROWE did knowingly commit Obstruction of Justice by knowingly using in a deposition in an ongoing criminal proceeding a false document, being a Myspace message purporting to have been made by Irwin Glispie, all with the intention that the said false document appear in evidence in the said proceeding, all of which was contrary to the form of the Statutes in such cases made and provided and against the peace and dignity of the State of Indiana.

> [O]n or about the months of November, December 2006 and January, February 2007, at Pike County, State of Indiana, and on multiple occasions therein, the said MICK ROWE A/K/A HANDSOME MICK ROWE did knowingly maintain a building for keeping and using marijuana to-wit: Rockstar Tattoo Parlor located at 715 Main, Petersburg, Pike County, Indiana, all of which was contrary to the form of the Statutes in such cases made and provided and against the peace and dignity of the State of Indiana.

*Appellant's Supplemental Appendix Vol. 2* at 31, 34.

contacted other individuals, including Mother and Glispie. Thereafter, Detective Odom prepared a probable cause affidavit and the 2017 charges were filed.

[10] During the interview with police, A.J. recalled the first time Rowe touched her was in 1997, shortly after Rowe had moved into the home. He touched her vagina, over her clothes, which she said he continued to do essentially whenever they were alone, and the touching increased in frequency and duration. After a few months, the touching progressed from touching outside her clothes, to under her clothes, to eventually removing her clothes. A.J. reported that, in 1997, while living in Winslow and when A.J. was nine years old, Rowe touched her vagina and manipulated her labia.

[11] When A.J. was eleven or twelve years old, the family moved to Martinsville. A.J. told the detective that Rowe continued with the inappropriate touching and, by then, Rowe was penetrating her vagina with his fingers. After about six months in Martinsville, the family moved to Terre Haute, and after a few days of attending school, A.J. began being home schooled by Rowe. She said that he had her watch pornography three to five times a week. Rowe continued the touching and attempted unsuccessfully to penetrate her with his penis. He agreed to give her a dog if she performed oral sex on him, which she did, and which lead to repeated demands for it. A.J. recalled that the family moved to Nashville, Tennessee when she was around sixteen years old. Rowe continued to attempt intercourse but she said he was frustrated that it was not successful

due to her tensing up and due to their size difference.[2] In 2006, the family moved from Nashville to Petersburg, Indiana, where she recalled the first instance of intercourse with ejaculation, which occurred at Rockstar Tattoo Parlor. She said that, thereafter, intercourse became more common.

[12] A.J. described an incident occurring in June of 2006, shortly before her eighteenth birthday. Rowe had learned that A.J. had a crush on a boy near her age, and Rowe argued with her about it at the tattoo shop. He pushed her down on her stomach, put a hand between her shoulder blades, and forced anal intercourse, which caused her to bleed for several days.

[13] Later, A.J. confided in Glispie that Rowe had been sexually abusing her, and Glispie went to law enforcement and the State filed the May 2007 charges against Rowe. A.J. stated that Rowe had instructed her what to say in the 2008 deposition, telling her to deny the sexual relationship with him and placing her in fear if she were to tell the truth.

[14] A.J. stated that, after the incest and other charges were dismissed, she moved with Rowe to Oakland City, where he opened another tattoo shop, and then, when she was twenty-one, they moved to Evansville. At his instruction, A.J. became a stripper, working five or six days a week, and gave him the money, as he did not have a regular job. He also began prostituting her. According to A.J., Rowe controlled the money and only gave her some when he thought she

---

[2] She estimated that Rowe weighed over 400 pounds.

deserved or needed it. She was with Rowe until age twenty-seven, when in the fall of 2015, A.J. met her current husband and left Rowe. Detectives spoke to other individuals, who corroborated that Rowe was manipulative and brainwashed A.J. and that she was dependent on him.

[15] Based on their interview with A.J., the State charged Rowe on July 27, 2017 with Class A felony child molesting and Class A felony criminal deviate conduct resulting in serious bodily injury, which, respectively, read as follows:

> [O]n or about 1997 in Winslow, Pike County, State of Indiana, MICKEY E. ROWE, a person of at least twenty-one (21) years of age did knowingly perform deviate sexual conduct with A.J. (A Minor), a child under the age of fourteen years, to-wit: nine (9) years old with D.O.B. of June 1988, by penetrating the child's sex organ with his fingers, and forcing the child's labia apart.

> [F]rom mid to late June, 2006 in Petersburg, Pike County, State of Indiana, MICKEY E. ROWE did knowingly cause A.J. (A Minor), to submit to deviate sexual conduct when such other person was compelled by force, to wit: after a verbal argument escalated, Mickey E. Rowe pushed A.J. (A Minor) down on her stomach, put one hand between her shoulder blades, pulled down A.J.'s shorts and underwear and forced anal sexual intercourse on A.J., said act resulting in serious bodily injury [], to-wit: extreme pain and anal bleeding for three (3) days.

*Appellant's Appendix Vol. 2* at 29-30.

[16] On December 20, 2017, Rowe filed a motion to dismiss the charges. Rowe alleged that the present charges should be dismissed because they were barred by I.C. § 35-41-4-4, which provides, in relevant part, that a prosecution is barred

if "the instant prosecution is for an offense with which the defendant should have been charged in the former prosecution." In his motion to dismiss, Rowe asserted that the 2007 and the 2017 allegations were based on the "same fact patterns" and that Rowe "should have been prosecuted for the current charges" in 2007 when the State filed charges against him in the cause numbers discussed above. *Appellant's Appendix Vol. 2* at 53. He argued, "To take alleged facts that were or should have been known to the complaining witness at the time of the 2007 case and dress[] them up in a different costume by filing as different offenses . . . does not change the fact that if Mr. Rowe was to be prosecuted for these crimes, the opportunity to have done so was when the original cases were charged in 2007." *Id*. at 59.

[17] The court denied Rowe's motion on February 9, 2018. In its order, the trial court found that, at the time the State filed Cause 299 in July 2007, the State "was unaware of facts sufficient to constitute probable cause tending to show that the defendant had sexually molested A.J. as a nine (9) year old child in 1997" and "was unaware of facts sufficient to constitute probable cause tending to show that the defendant had engaged in an act of forced anal intercourse with A.J. in June of 2006." *Id.* at 111-12. The trial court's order further found: (1) the 2007 incest charge alleged conduct in November 2006 through February 2007; (2) the incest charge was based on Glispie's report to authorities that Rowe had been engaging in a sexual relationship with A.J. for six years, dating back to when A.J. was twelve, and Glispie did not have specifics as to what sex acts or locations of sex acts were involved; (3) A.J. did not cooperate with the

2007 incest prosecution and first disclosed it to law enforcement in May 2017; and (4) A.J.'s May 2017 disclosure formed the basis of the 2017 charges that alleged molestation in 1997 and forced anal intercourse in June 2006.

[18] After the trial court denied his motion to dismiss, Rowe filed a motion to certify the order for interlocutory appeal, which the trial court granted. We accepted jurisdiction, and Rowe now appeals.

## Discussion & Decision

[19] Rowe contends that the trial court abused its discretion when it denied his motion to dismiss. We review the trial court's decision for an abuse of discretion. *Thompson v. State*, 966 N.E.2d 112, 117 (Ind. Ct. App. 2012), *trans. denied*. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it, or when the court misinterprets the law. *Id*. We will not reweigh the evidence, and we resolve any conflicts in the evidence in favor of the trial court's ruling. *Schmidt v. State*, 986 N.E.2d 858, 860 (Ind. Ct. App. 2013), *trans. denied*. We will affirm the trial court on any basis apparent in the record. *Id*.

[20] Under Ind. Code § 35-34-1-4(a)(7), a defendant may move to dismiss a prosecution prior to trial on grounds that "[t]he prosecution is barred by reason of a previous prosecution." Likewise, I.C. § 35-34-1-10(d) permits a defendant who has been sentenced on a guilty plea to move for a dismissal of an information "for a related offense" and that "[t]he motion shall be granted if the plea of guilty was entered on the basis of a plea agreement in which the

prosecutor agreed . . . not to prosecute other potential related offenses."  Here, Rowe sought dismissal, arguing that the 2017 charges were barred under the successive prosecution statute, I.C. § 35-41-4-4, as well as by his plea agreement.  He argues on appeal that "[t]he trial court erroneously interpreted Ind. Code 35-41-4-4 to permit successive prosecutions based on allegations of the same incestual relationship resurrected by the alleged victim's changed story."  *Appellant's Brief* at 9.

[21]   Indiana's successive prosecution statute provides, in relevant part:

> A prosecution is barred if all of the following exist:
>
> (1) There was a former prosecution of the defendant for a different offense or for the same offense based upon different facts.
>
> (2) The former prosecution resulted in an acquittal or a conviction of the defendant or in an improper termination under section 3 of this chapter.
>
> (3) The instant prosecution is for an offense for which the defendant *should have been charged* in the former prosecution.

I.C. § 35-41-4-4(a) (emphasis added).  The parties appear to be in agreement that subsections (a)(1) and (a)(2) have been satisfied, but they disagree as to whether Rowe "should have been charged in the prior prosecution" as required in subsection (a)(3).  Our Supreme Court has held that the words "should have been charged" must be read in conjunction with Indiana's joinder statute.

*Williams v. State*, 762 N.E.2d 1216, 1219 (Ind. 2002); *State v. McDonald*, 954 N.E.2d 1031, 1033 (Ind. Ct. App. 2011). The joinder statute provides in relevant part:

> A defendant who has been tried for one (1) offense may thereafter move to dismiss an indictment or information for an offense which could have been joined for trial with the prior offenses under section 9 of this chapter. The motion to dismiss shall be made prior to the second trial, and shall be granted if the prosecution is barred by reason of the former prosecution.

I.C. § 35-34-1-10(c); *Williams*, 762 N.E.2d at 1219. Section 9, to which the joinder statute refers, reads:

> Two (2) or more offenses may be joined in the same indictment or information, with each offense stated in a separate count, when the offenses:
>
> > (1) are of the same or similar character, even if not part of a single scheme or plan; or
>
> > (2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

I.C. § 35-34-1-9(a). Generally, "'where two or more charges are based on the same conduct or on a series of acts constituting parts of a single scheme or plan, they should be joined for trial.'" *McDonald*, 954 N.E.2d at 1034 (quoting *Williams*, 762 N.E.2d at 1220). In determining whether crimes are part of a single scheme or plan, we examine "whether they are connected by a distinctive

nature, have a common modus operandi, and a common motive." *Hahn v. State*, 67 N.E.3d 1071, 1082 (Ind. Ct. App. 2016) (quoting *Williams*, 762 N.E.2d at 1220), *trans. denied*.

[22] Here, Rowe claims that the 2017 charges are based on the same sexual relationship upon which the 2007 incest charge was based and that they are part of one single scheme and therefore should have been joined in the 2007 prosecution. He argues, "The State should not be able to seek refuge after conducting a shoddy investigation or even rewarding a lying witness[,]" and that "[i]f inconsistent statements and new accusations by an adult victim can justify successive prosecutions, those accused of sexual offenses will live forever under the threat of prosecution." *Appellant's Brief* at 8-9, 12. We reject Rowe's contention that the 2017 charges should have been brought as part of the 2007 prosecution.

[23] The 2007 incest charge alleged that Rowe committed Class C felony incest when "during the months of November, December 2006 and January, February 2007," he "engage[d] in sexual intercourse" with A.J. *Appellant's Supplemental Appendix Vol. 2* at 34. In contrast, the two 2017 charges alleged that Rowe committed: (1) Class A felony child molesting, when in 1997, he knowingly performed deviate sexual conduct with A.J. by penetrating her vagina with his fingers, and (2) Class A felony criminal deviate conduct resulting in serious bodily injury, when in June 2006, Rowe knowingly caused A.J. to submit to deviate sexual conduct when he forced anal sexual intercourse upon A.J. that resulted in extreme pain and bleeding for several days. The 2017 charges were

thus based on Rowe's conduct in 1997 and in June 2006, whereas the 2007 incest charge alleged conduct that occurred later, "during the months of November, December 2006 and January, February 2007." Accordingly, the 2017 charges were not only temporally distinct from the 2007 incest charge, they were also not based on a series of acts "so connected" to the 2007 incest charge "that they constituted parts of a single scheme or plan." *Williams*, 762 N.E.2d 1220.[3]

[24] Furthermore, the 2007 charge of incest was based on Glispie's reports to authorities and the ensuing interviews with other individuals; the charge was not based on information from A.J., who did not cooperate with the investigation because of Rowe's influence. Because she did not come forward to authorities until May 2017, the State was not aware of and did not have sufficient evidence in 2007 to charge Rowe with the now-charged 1997 and June 2006 conduct. *See McDonald*, 954 N.E.2d at 1035 ("[t]his is not a case of attempted piecemeal prosecution" and "[t]he State simply had inadequate

---

[3] In *Williams v. State*, 762 N.E.2d 1216 (Ind. 2002), the Court determined that Williams was entitled to dismissal of a second set of charges. There, a defendant sold cocaine to an undercover officer and then fled into a nearby vacant apartment, where he was apprehended. When Williams was caught, the officer discovered cocaine on him. The State first charged Williams with residential entry and possession of the cocaine discovered on him at his arrest, and later, the State charged Williams with delivery of the cocaine to the undercover officer and possession of cocaine. Williams pled guilty to the first possession charge and, upon conviction, sought to dismiss the second set of charges. Our Supreme Court held that Williams was entitled to dismissal of the second set of charges because those charges "were based on a series of acts so connected that they constituted parts of a single scheme or plan" and should have been charged in a single prosecution. *Id.* at 1220. We find that, unlike in *Williams*, the charges filed against Rowe were not based on a series of acts so connected that they constitute parts of a single scheme.

evidence to support charging McDonald until July 2010"). The trial court did not abuse its discretion when it determined that the successive prosecution statute did not bar the State from bringing the two charges against Rowe in 2017.

[25] Rowe contends that even if the successive prosecution statute does not bar the 2017 charges, due process and contract principles do because "[t]he language of the 2008 plea agreement prevents the State from prosecuting the alleged sexual relationship between A.J. and Rowe." *Appellant's Brief* at 17. Rowe pled guilty to maintaining a common nuisance and obstruction of justice and agreed to serve an eighteen-month jail sentence in exchange for the State dismissing with prejudice its charge that Rowe had sexual intercourse with A.J. on or about the months of November of 2006 and February of 2007. Apparently in recognition of the fact that the dismissed incest charge covered conduct that occurred during the months of November 2006 through February 2007, whereas the 2017 charges covered prior conduct in 1997 and in June 2006, Rowe asserts that "[w]hen the parties took depositions in Cause No. [440] . . . they were asking about any sexual contact with Rowe at any time" and "[t]hus, when the State agreed to dismiss with prejudice Cause No. [440], Rowe had a reasonable expectation that the State was resolving all allegations he had a sexual relationship with his daughter." *Id*. at 18. He claims, "The State agreed to drop the charges relating to the alleged incestual relationship in exchange for 1.5 years of jail time." *Id*.

Contrary to his suggestion, the State did not agree to drop any and all charges "relating to the alleged incestual relationship" between Rowe and A.J. It agreed to drop an incest charge alleging that, between the months of November 2006 and February 2007, Rowe had sexual intercourse with A.J. We reject Rowe's attempt to effectively expand the terms of the plea agreement. The trial court did not abuse its discretion when it denied his motion to dismiss.

Judgment affirmed.

Brown, J. and Tavitas, J., concur.